Good morning, your honors. May it please the court, Alison Danner for the United States. Your honors, in this case, the district court erred in its conclusion that the defendant carried his burden of demonstrating he had a legitimate expectation of privacy in room 13575 of the Hilton Hotel at 1 a.m. in the morning. What do you have to say about CUNAG? CUNAG is fully supportive, I think, of our position in this case. Tell me why. Okay. So in CUNAG, the question was, did the defendant have a legitimate expectation of privacy after the hotel had locked him out of the room and called the police? And the court concluded, no, it didn't, for a variety of reasons. First, they noted that the defendant had rented the room with a stolen credit card, which is also true in this case. Second, the hotel had done its own investigation as to whether the credit card were fraudulent. They took steps to do their own investigation, which is different from Bautista, for example, where the hotel took no steps. And CUNAG, was he locked out because the credit card was phony? Yes. In this case, they didn't even know the credit card was phony until months later. That's true. They didn't know the credit card was phony. Why isn't this more like Bautista than CUNAG? Because in Bautista, the hotel took no steps on its own. The hotel had a suspicion, perhaps, that the person had fraudulently rented the room. That's how I read it here. It looked to me from the record as though the hotel didn't actually do anything. They kind of danced around wondering what to do and called the police and let the police take the lead. In Bautista? No, in this case before us, yes. No, that's not true, Your Honor. It looks like they didn't actually lock the guy out of his room. Instead, they called the police. No, that's not true, Your Honor. In fact, the hotel first, when they determined or they suspected the defendant of stealing the belongings from the other case, from the other room, pardon me, they called him on the phone and they said, we're going to come up and speak with you. A little while later, it's not clear in the record how long later, they went upstairs. They opened the doorway to the room that he was registered to, 13-5-75. They looked inside. They found an empty key packet to the room from which the belongings had been stolen. They found no suitcases. They didn't. As I recall, the stolen things were never found in Young's effects when the hotel searches his effects. Is that right? They did not find them. That's right, Your Honor. He was no longer in the room. That's not to say that he didn't steal them. He might have run off and pawned them. But it doesn't mean that the hotel found them and locked them out because of it. The hotel didn't find them. But the hotel did lock him out because they thought he had stolen the belongings. They found the empty key packet. They knew from the lock reports that he had been mistakenly given access to the other room. They found a backpack full of checkbooks belonging to other people. They found a loaded gun. They found no suitcases. And he wasn't there to speak with him. Those of us who are frequent, well, the traveling salesmen of the judiciary system, I guess, we stay in hotels a lot. Right. And when things really get bad in a hotel and they decide to throw you out, as I recollect from my younger days when that happened, they wrap up all your stuff and put it in storage. They say you overstayed your time. You should have checked out no later than 1 p.m. or noon or something. And you come back and you can't get into your room and none of your stuff is in your room. It's in storage. And here all his stuff is in his room. Well, all his stuff is two backpacks, one full of stolen or ---- My daughter travels to five-star hotels all over the world with nothing but a backpack. A backpack is luggage. I don't get what you're talking about. I'm just referring not to the fact it's a backpack but the fact it's full of checkbooks belonging to other people and a loaded gun. Underwear and toothbrush and that kind of thing? The backpack that they found in the closet in which the gun was had no belongings. I believe the backpack under the bed had some personal belongings. How was he informed by the hotel that he was no longer a favored guest? He was informed when he came back and he tried to use his key and his key was disabled. He went down to the front desk and the front desk called security. Security then called the police and asked the police to detain him and ultimately he was handcuffed. The reason the luggage wasn't moved out of the room is not because the hotel wanted him still to have access to the room. It was because of the gun policy, the national gun policy, which prohibits the security guards from moving a loaded gun or a gun. Did they tell him you were evicted from your room? No, they didn't tell him you were evicted from his room. He wasn't there. You mentioned the expectation of privacy. Right. We're not mind readers, but if he hadn't been told that he was being evicted, didn't he still possess an expectation of privacy when he walked up to the door with his key and then found out the key would have been inactivated or demagnetized or something? Well, Query, first of all, whether he had a legitimate expectation if the room is fraudulently rented. In the Ninth Circuit, that's not in and of itself enough to divest him of expectation of privacy. Moving on to his subjective expectation, when he tries to use the key and the key no longer works, he goes down to the front desk and he isn't given a new key. He tried to use keys in hotels and the darn thing wouldn't work because it was sitting next to a credit card in my shirt pocket and the magnetism transferred. It doesn't tell me that the hotel thinks I'm a crook or anything. It just happens all the time. Your key doesn't work. You go down to the front desk, you say, fix my key. Right. And then the next step of that is the hotel gives you a new key. They might check your I.D. Hopefully they give you a new key. In this case, they didn't check his I.D. They called security immediately. But they didn't tell him he was evicted. They didn't tell him he was evicted, but they weren't. That's what I meant before when I said it looked to me like they were just dancing around until a cop settled it for him. The cops didn't settle it. I'm not interested in whether the cops settled it. I'm interested in whether the hotel evicted him or just danced around. I understand, Your Honor. The hotel locked him out. The hotel refused to let him back in the room. The hotel called the police. The police came in, talked to the defendant in the lobby. Then the hotel told the police we found a loaded gun. How does he know when he's being chatted up in the lobby that he's been evicted as opposed to people are suspicious of him and they're talking to him a lot? He knows he's not being let back in his room. That's the critical test under the law of this circuit. The hotel has taken affirmative acts to repossess the room. The key, a defendant notes in his papers, is the hotel's expectation. It's the hotel's actions here that govern the defendant's or the guest's legitimate expectation of privacy. The other guest who had his belongings stolen also had an expectation of privacy that was violated. The hotel was investigating to protect that guest and other guests in the hotel when they were investigating what happened, who stole these belongings. Based on the hotel's findings, the police didn't do any investigation with regard to the burglary. The hotel elected to lock him out of the room, and it's clear that the hotel locked him out of the room so that he could not get back in to the room. The Hicks Declaration, for example, says that. When you say it's clear, I'm wondering if it's clear to him. Judge Goodwin and I have both had the experience of our card not working, and we go and complain about it. Right. I've had that happen to me, too. That happens, I think, to anyone who uses these keys and these magnetic card readers. The point here, though, is the moment when he goes back down to the front desk and he's not given the new key. The police are called. That's why I asked you my first question. When he goes back downstairs to the front desk and says, hey, my card doesn't work, they don't say, well, I'm sorry, sir, that's because you've been evicted from your room. A gun would not have been a reason to evict him unless they have a hotel policy that he would not know about or a law in San Francisco that I don't know about. In Alaska, gee, people have guns in their rooms all the time. A lot of people come there to go hunting and stuff. It's clear that the hotel was not focused on the gun. The hotel was focused on the theft of the other guest's belongings. But they didn't catch him for it. They felt that they did catch him. The question is, was their actions justified? They took affirmative steps. As I recall, they didn't find the theft victim's cell phone or laptop in Young's belongings. Right. What was the effect? Somebody called him from the hotel to say, did they indicate that they were investigating a theft? Or what was the conversation there? The exact words of the conversation, Your Honor, aren't established by the record. The declaration submitted by the security agent, the security officer at the hotel, said that he called to confirm which room he was really staying in because he was registered. The defendant was registered to two rooms, and he replied, 13-575. An earlier statement by that same security officer, which the defendant cites in his papers, states that the defendant said he didn't steal the items. But he was clearly called by the security to inquire which room about the room mix-up. Any other details of the conversation aren't in the facts of the record. But certainly he knew that security wanted to come speak to him. So did the person identify himself as security and said that he wanted to speak to him? What exactly the security guard said to him in terms of identifying himself isn't in the facts of the records. One can assume that's true, but, again, not in the facts before you. So, again, the hotel refused to give him a new key. The front desk called security. Security called the police. The police spoke with him. Then the police handcuffed him to the bench in the security office. And it was only after all of that had transpired that the police first went upstairs to the room and seized the gun. Was the hotel's actions justified? That's the other part of the test. And certainly the hotel suspected him of stealing the items from the other guests. The cases don't talk about what the standard is for justification, but criminal activity, suspicion of criminal activity certainly seems to satisfy the test. I'd like to reserve the rest of my time for rebuttal. Thank you. Good morning, Your Honors. Elizabeth Falk on behalf of Apelli Young. Counsel, I'm wondering whether this makes a difference. It looks to me as though when the hotel first went up to his room and poked around, they discovered and observed the gun. So the hotel security people could testify about what they had seen. And since there was no state action in that first attempt, arrest, and they could testify about the gun, I don't really see why it matters whether the police violated the Fourth Amendment the second time when they went up and the policemen watched from the door as the security person. Does Your Honor mean in terms of the ultimate resolution of this case? When Your Honors ---- I suppose so, but also I'm not quite sure what would be properly suppressed, considering that there's no state action on the first private search. The seizure of the firearm by the police is what the ---- It doesn't matter. Well, because the physical gun, Your Honor, the physical gun is currently excluded from trial. So what we're talking about is a dramatic exhibit rather than evidence that he had the gun? That's correct, Your Honor. The government could have elected to proceed to trial and not take this appeal. The government elected to appeal. Well, this whole case is just about the drama of the trial, showing the jury a real gun. The gun is going to come in anyway because of the testimony of the security person? Your Honor, I can't answer to why the United States took this appeal or why they elected to not go to trial based on the testimony of the security guards. I guess we'll find out in rebuttal. Very well. Your Honor, the clear error standard applies as to the district court's factual findings, and they were twofold. The first factual finding the district court made was that the hotel was still investigating this situation. They had not concluded that they were evicting Mr. Young. There was a lot of important evidence in the written record that supported the district court's findings. As opposed to the CUNAG case where the police were specifically informed that the defendant had been evicted by the manager, here it is clear that Officer Conyaris was not informed by the hotel that Mr. Young had been evicted. The dance that, Your Honor. Could you tell us exactly where to look in the excerpts? Yes, ER 68 is Officer Conyaris' declaration that consistently refers to Young's room, his room. The fact that he calls his supervisor while this half-an-hour dance is going on and is concerned that he can't go into the room shows that the Hilton had not evicted Mr. Young. It did not inform the officer that it had evicted Mr. Young. If it had, there would have been a different conversation. And even though the officer's subjective intent is not what's important here, it's the hotel's, the evidence of that conversation relays more about the Hilton's intent than anything else that was submitted. Isn't the Hilton's intent really at issue? Isn't it whether the defendant has an expectation of privacy that society is prepared to consider reasonable? That's the over... Here he was, he couldn't get back into his room. He knew that security was investigating him. He couldn't get back in his room. He goes down to the desk and the police show up and handcuffed him to the chair and it seemed to me that at that point it's hard to think that he has an expectation of privacy in his hotel room. Well, his access to his hotel room may have been temporarily blocked, but access, the Fourth Amendment does not equate access to a room with whether or not the police need to get a warrant to search that room and whether there's still a reasonable expectation of privacy. For example, the police surround your house and try to block access to your house, that doesn't mean that they can go in and search your house. They still have to get a warrant. Just because your access is temporarily blocked does not mean your subjective expectation of privacy is gone. And that's basically what happened in this case, that Mr. Young's access was temporarily denied because of the location of the firearm in the room. But they had not made a decision he was never going to be allowed back into that room. That's what the district court focused on. It's not their decision that we're worried about, right? They obviously took affirmative steps. They locked him out. They called the police. And so the question is, were any further expectations of privacy in a hotel room reasonable, as opposed to your hypothetical about a house? Nobody has ever put forth a declaration in this case, and the government had plenty of opportunity to get declarations from these individuals that Mr. Young was informed that he was evicted. Well, does he have to be informed? I mean, we don't require that in our other cases that he's informed that he's evicted. It's a question of, objectively speaking, is the expectation of privacy reasonable? Correct. And the case law does not require that he be informed, but it's certainly evidence of whether or not he still maintains a subjective expectation of privacy in the hotel room. It's evidence of that. The district court also found that the electronic lockout in this case was not an eviction. That's a factual finding. That's a factual finding that's entitled to the very, very strong deference that clearer review requires. But I guess I'm still having trouble. I mean, you're focusing on did the hotel, in fact, evict him or not under their policies, but is that really relevant to the question at issue, which is what the defendant understood or what was reasonable in that context to understand when you're handcuffed to a chair? I'm having trouble understanding the focus on whether, in fact, he was evicted or not, or the hotel had made a decision. Well, the district court actually in this case found that even though a step was taken, it was not an affirmative step of dispossession. That was what the district court's factual finding was, was that the step that was taken, which is the lockout, was not an affirmative act of dispossession. It was a security measure that was done to ensure that nobody accessed the firearm. And so it does, the focus of the hotel's intent was something that affected the district court's decision. We know what the factual finding is, which is he was locked out of the hotel. I mean, the other issues in the hotel's intent, I guess, why is that relevant to the determination? Because the case law indicates that it is. I mean, what the intent of the hotel was in connection with that lockout is relevant, because the hotel is the entity that's taking the affirmative steps. In this case, that lockout was a temporary measure. I think what you just said, but tell me if I'm right, is that the Ninth Circuit law that says once he's evicted, he doesn't have a reasonable expectation of privacy, means we have to look at what the hotel intends with regard to whether he's evicted. Correct. Is that what you mean? And when Your Honor was referring to the half-an-hour dance and what the hotel was actually intending to do at that time, that's why Your Honor was focusing on that, I believe. It's because that's what Ninth Circuit law is instructive on that, on that that's a part of the requirement. What was the timeline at the point where he was handcuffed? What had the police done up to that point? Up to the point that Mr. Young was handcuffed, he was talking to Officer Conearas in the lobby for approximately 20 to 30 minutes. And Officer Conearas said ER 68 indicates that he was waiting for the hotel to tell him what to do, or he was waiting for the hotel to make a, to, I believe the exact words is he was waiting for further instructions from the hotel. Did the officer then know that there was a gun in the room? No. The officer only handcuffed Mr. Young after he was told that there was a firearm in the room. And he did that independent of what the hotel told him to do. And his declaration alludes to the fact that he had asked Mr. Young whether or not he'd been to prison, and apparently he thought he had sufficient cause to handcuff Mr. Young at that point because he learned about the gun. But that's not relevant to the question of mystery. There's something I didn't understand there. Okay. The police talked to Young about family matters and whatnot, basically just chatting in the lobby for 20 minutes. That's correct. He's not handcuffed then, right? That's correct. And then the security man tells the policeman about the gun, and the policeman takes Young to the security office and handcuffs him. That's correct. Why the change in what they were doing with Young? One can only expect that the policeman, after hearing about the firearm, believed that he had cause to handcuff Mr. Young. Well, there's nothing wrong with having a firearm unless you happen to be a felon or you're in a place where it's not allowed. That's correct. Because Young had admitted that he'd been to prison, so the policeman had probable cause to think it was for a felony? We would argue no. That issue was not raised below, but it appears that that's what the police officer was thinking at that time, was that he had probable cause to. He would probably think so. Jail if it's a misdemeanor, prison if it's a felony. That whole. Use the word prison. That whole exchange was not fleshed out. Mr. Young's position was not presented on that point. That's what the officer said, he claimed. It's not clear how that conversation came up. It's not clear if he. But the testimony of the officer was that the word prison was used? That's right. That's the testimony of the officer. And that issue, of course, what the policeman did at that point, there's probable cause for arrest because of the gun plus probable felony. But he's not in the room. That's right. At that point, even if there is probable cause for arrest, this whole search incident to arrest, that was never briefed or argued below by the government. And, in fact, we would, of course, argue that the room was sufficiently located far enough away from the arrest that that would not have been a warrant exception. I haven't stayed in the Hilton for years, but as I remember, the rooms are pretty far away from wherever you'd be in the lobby. That's right. It's a very large hotel. It's an extremely large hotel. In addition to making a factual finding that the district court was still investigating, excuse me, that the hotel was still investigating this crime and that the lockout was not temporary, the district court also discredited the declaration of William Marwag. Now, the government argues in its brief, in its reply brief, that the district court did no such thing. In its opening brief, the government concedes, that's the government's opening brief at 9, that the district court appeared to discredit the declaration, which was the security director, who was not present at the hotel, later characterizing this dance, as Your Honor has referred to, as resulting in an eviction. Mr. Marwag was the only person who ever referred to the word eviction. The security guard's declarations show that the following sequence of events occurred. They located the firearm and they locked the room. Not that Mr. Marwag instructed them to evict Mr. Young. Not that Mr. Marwag instructed them that if Mr. Young came back to the hotel, they should kick him out or they should inform him that he was no longer welcome in the hotel. The district court did not, as the government argues, did not discredit that declaration because of a lack of a written policy. The lack of a written policy was evidence that supported the district court's decision to discredit that declaration. That is a factual finding that is entitled to a clear error standard. And if this court agrees with the district court's decision to discredit the declaration, there is no evidence that the Hilton intended to evict Mr. Young. With no additional questions from the panel, I will submit. Thank you, counsel. Again, the defendant had the burden below of showing he had an expectation of privacy. Realize you've risked getting some law that's really bad for the United States on hotel room searches just for the drama of an exhibit instead of testimony that would be perfectly credible. I think the district court's ---- Am I misunderstanding this? I mean, it looks to me like they could get the evidence of the gun in without any difficulty because it was not a search by the government or any agents of the government that discovered the gun. That's right. And under Jacobson, the fact of the gun, the location of the gun, the existence of the gun in the room, in the backpack, all ---- Oh, I'm scared to touch it. Well, that wouldn't be our strategy in any event, Your Honor. Of course, there are some other technical elements of a felony in possession case that the hotel security ---- Why are you here? What is really at issue? Is there anything at issue besides getting the gun itself in as an exhibit? We're here because the district court's decision was clearly wrong under the controlling law. No, no, they're wrong district court decisions all the time. I made many myself, I'm sure. But you don't get interlocutory appeals all the time. This one clearly raised the standard that it met the internal review for being sufficiently wrong in our view that it's worth ---- Why does it matter to this case? It matters because the decision was wrong. We're entitled to rely on the controlling law. The certification has to ---- requires the U.S. attorney himself to say it's more than wrong. Your Honor, we felt that it was important to take the appeal, both for legal and factual reasons. The defendant in this case put forth no facts other than that he was staying in the room, in room 1375 of the hotel. The facts are uncontested. The defendant was locked out of the room multiple times. He was not let back in the room. When he came back to the room, the hotel called security. The Marwick Declaration describes that the hotel was never going to give this gun back to the defendant. Is it necessary under our case law that the hotel intended to evict the guest? No, the standards in the case law are affirmative acts of repossession, cause for ejection, affirmative acts. That's the standard that's articulated in the relevant cases. And the hotel certainly took affirmative acts. I'm troubled by the adverb. Certainly. It looks to me like what happened here is the security person was looking for evidence that he'd stolen a laptop and cell phone from Johnson, didn't find it, did find a gun. Hilton doesn't like guns in the rooms because of the safety issue and not much legitimate hunting going on in San Francisco. So they're dithering about what to do, basically, continued calls. And then they call the police in, and the police, they don't evict the man. They lock him out of his room, but they don't evict him, and they don't do anything to evict him. They don't pack up his stuff and take it downstairs to the bellman's desk or anything like that. And then what happens is the policeman questions him, finds out he's been in prison. Gun plus prison, probable cause to arrest for felon in possession. At that point, he's handcuffed. Let's call that an arrest. But up to that point, no eviction by the hotel. And in fact, the policeman's supervisor told him you can't go into his room, so they do that phony thing where the policeman stands by the door and watches as the security guard unpacks the backpack and shows the policeman the contents. I can't see the eviction, and I can't see steps toward eviction. It looked like they had a troublesome, scary guest, and so they wanted the police to take care of it, which they did. The declarations show that the Hilton Hotel was guiding what was happening with the defendant in his room. The hotel took repossession of the room by disabling his keys so that he could not come back in the room. When he did come back unexpectedly, they had him arrested. So whether if I overstay my deadline to get out of the hotel or if my key just gets messed up in my pocket or something, or if they just gave me a bad key and I can't get into my room, whether it's eviction or not, depends on what. The question is, did the hotel take affirmative acts to repossess the room? It's not just the key. The key is one factor. It's an additional, when the guest comes down to say, my key doesn't work, it's calling security, it's calling the police. It's him being handcuffed. Only after all of that had occurred did the police seize the gun. That is affirmative steps to repossess the room. In any event, the gun... So if instead of immediately saying, oh, I'm sorry, sir, and giving me a new key... Right. ...they chat me up for a while and they're suspicious of me, then I've been evicted? Security had also called and said, we want to speak with you. There were multiple indications that there was something amiss that wasn't just the key strip was demagnetized. The hotel believed that he had stolen items from another guest. The Hicks report of that evening says suspected burglary. They were interested in the burglary. They were not concerned about the gun except to the extent that they couldn't move the luggage out of the room. They took all the steps they could, given that he wasn't there. They repossessed the room. They didn't allow him back in. They had him arrested. Mr. Young had no longer any expectation of privacy in the room. Thank you, counsel. Thank you, Your Honor. Anybody mention in the trial court, before Judge White, anybody mention the inevitable discovery rule? Yes. Inevitable discovery was argued. We argued it below. We think it still applies. The district court did virtually no analysis of the inevitable discovery rule rationale. It's in, obviously, in the transcript that you have. And we believe inevitable discovery does apply here. Hilton was not going to give this gun back. If the case goes back and you try it, you bring up inevitable discovery, then. If we – if it's remanded for the – The vigilantes didn't get the gun into the record, but maybe inevitable discovery will. Well, we certainly think that applies, Your Honor. This was famous for its vigilantes. Thank you very much, Your Honors. Thank you, counsel. United States v. Young is submitted. And we'll hear United States v. Young in a moment.
judges: Goodwin, Kleinfeld, Ikuta